**Felix J. PRESLEY, Plaintiff,**

v.

**SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant.**

**No. Civ. A. J84–0690(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 4, 1988.

Don H. Evans, Jackson, Miss., for plaintiff.

Christy D. Jones, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant South Central Bell Telephone Company (SCB) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] Plaintiff timely responded to the motion and the court has considered the memoranda of authorities together with attachments submitted by the parties.

Plaintiff Felix Presley is or was an owner and shareholder in the corporation known as Memorial Gardens of Yazoo, Inc., which owned a cemetery outside of Yazoo City, Mississippi. In 1974 and 1976, SCB placed two aerial telephone cables across the cemetery on poles which had been previously erected by Yazoo Valley Electric Power Association (Power Association).[2] As Presley was of the opinion that the cable was improperly on his property since SCB had no right-of-way or permission from him, he contacted SCB in February 1979 and informed the company that he wanted the company either to remove the cable from the property or pay him for allowing the cable to remain in place. Receiving no response, plaintiff continued to press the company concerning the removal of or compensation for the wires until March 1979, at which time two company employees met with plaintiff. According to Presley, at that meeting he requested of

---

1. This cause originated in the Circuit Court of the First Judicial District of Hinds County, Mississippi but was removed to federal court on September 11, 1984. The present motion was filed by SCB on October 17, 1986. On March 21, 1988, Judge Henry T. Wingate, to whom the case had been assigned, entered an order recusing himself. The case was then assigned to, and the motion came to the attention of, the undersigned on March 22, 1988.

2. The Yazoo Valley Electric Power Association and Southern Bell Telephone and Telegraph Company executed, on September 30, 1963, a general agreement for the joint use of poles in rural areas. It was under that general agreement that SCB claimed its right to utilize the poles over the cemetery property.

SCB the sum of $10,000 in response to an inquiry of a company "right-of-way agent" as to how much Presley would take to allow the cables to remain on the property. For a period of time following that meeting, Presley made numerous, though unsuccessful, efforts to talk further with company officials concerning the matter of payment or removal until he, on June 8, advised SCB that unless someone from the company met with him by six o'clock p.m. that day to settle the matter, plaintiff was "going to shoot the cable at six o'clock p.m. that evening." [3] (Affidavit of Felix Presley).

Sometime during the day on June 8, SCB learned that service to some of its subscribers in the vicinity of the cemetery had been interrupted. Employees dispatched to locate the problem, make repairs and restore service to the customers found the damaged lines to be on Presley's property. According to SCB, plaintiff refused to allow its employees access to the damaged cables on plaintiff's property which necessitated SCB's relocating its cables around the cemetery. Plaintiff denies that anyone asked to come onto his property. But, whatever the reason, SCB rerouted its cables around Presley's cemetery, and in July 1979, filed suit to recover the cost of relocation and damages for the loss of the two cables which remained on plaintiff's property.[4] The case went to trial and, after the court denied a directed verdict for Presley, the case was submitted to a jury which was unable to reach a decision. The court therefore declared a mistrial.

Ultimately, by agreed order the case was voluntarily dismissed by SCB pursuant to Rule 41(c) of the Federal Rules of Civil Procedure; in the order of dismissal, the court directed that each party bear its own costs. Following that dismissal, Presley instituted the present action charging SCB with malicious prosecution and outrageous conduct toward him.

To establish a case for malicious prosecution, it is necessary that the plaintiff prove the following essential elements: (1) the institution or continuation of original judicial proceedings; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceedings; and (6) the suffering of injury or damage as a result of the action or prosecution. *Owens v. Kroger Company*, 430 So. 2d 843, 846 (Miss.1983). On this motion for summary judgment, defendant SCB contends that from the undisputed facts in the record, plaintiff cannot establish the essential elements of his claim and therefore summary judgment is appropriate. The focus of defendant's motion for summary judgment is on the want of probable cause element; SCB takes the position that Presley's claim cannot be maintained because SCB had probable cause to institute the action against him. With this contention, the court must agree.

Probable cause in the context of malicious prosecution means reasonable cause. So long as the instigator of the action "reasonably believed he [had] a good chance of establishing [his case] to the satisfaction of the court or the jury[,]" he is said to have had probable cause. W. Prosser and W. Keeton, *The Law of Torts* § 120, at 893 (5th ed. 1984). *See also J.C. Penney Company, Inc. v. Blush*, 356 So.2d 590, 593 (Miss.1978) (probable cause means reasonable ground for a belief in existence of facts warranting the proceedings complained of). For purposes of a malicious prosecution action, probable cause is "determined from the facts apparent to the observer when prosecution is initiated," and when the facts are undisputed, it is for the court to determine whether probable cause existed. *Owens*, 430 So.2d at 846. In the case at bar, the facts, or at least the

**3.** Plaintiff states that he did this on the advice of his former attorney who told him that if the company did not cooperate in settling the matter, he could obtain a court order to have the cable removed.

**4.** When SCB rerouted its lines, several hundred feet of cable remained on the cemetery property.

"material" facts,[5] are in large part undisputed. For example, it is undisputed that in March 1979, Presley requested of defendant $10,000 as payment for allowing the cables to remain on his property. Otherwise, and without that payment, he wanted the cables removed. Then, on June 8, 1979, he advised SCB that unless company officials settled the matter with him, he would shoot or cut the cables at six o'clock p.m. that day.[6] Further, after having received Presley's threat or ultimatum, SCB subscribers in the vicinity of plaintiff's property experienced service outage on June 8. Employees dispatched to restore service found that the trouble spot was on plaintiff's property. SCB claims that when Presley refused to permit access to his property to repair the cables, it was forced to reroute its cables around the property in order to restore service to its other subscribers and that when it did so, several hundred feet of its cable remained on Presley's property. It was the cost of relocating those cables for which SCB sought compensation in the prior lawsuit. Presley denies that he refused to allow SCB employees access to his property since, according to his affidavit,

> [n]o one asked me to come onto the cemetery property and no one asked if they could remove the cable or did they ask if I would give them permission for an extension of time in which to remove the cable or to get the matter settled.

Presley further denies that he was responsible for any damage to the cable—that he never shot or cut the lines, nor did anyone on his behalf do anything to the lines—but he does not deny that the cables across his property *were* damaged. He does admit, however, that he threatened to shoot or cut the cable, though he now disclaims that he had any actual intent to go through with his threats to damage the cable.

---

**5.** For a contested issue to be material, it must have some legal significance to the resolution of the case. *Union Planters National Leasing, Inc. v. Woods,* 687 F.2d 117, *reh'g denied,* 691 F.2d 502 (5th Cir.1982).

**6.** SCB claims that Presley advised that he would cut the cable if a $10,000 payment were not forthcoming by six o'clock p.m. Presley does

Based on the facts presented, it appears clear that SCB believed, and reasonably so, that Presley had, on June 8, damaged its cables; on that date, Presley had threatened to shoot or cut the cables, and around that time, cable on his property was found to have been damaged. Further, based on Presley's admitted ultimatum, the company perceived that Presley, even if he had not already damaged the cables, intended to cut them at six o'clock p.m. if it did not succumb to his demand for payment. Rather than yield to this demand, which Presley admits to having made, SCB chose not to await the eventuality of Presley's cutting its cables at the six o'clock deadline and instead chose to reroute its lines around the cemetery. The question then is, given the stated facts, whether there was probable cause—a reasonable basis—for SCB's concluding that Presley was legally liable to it for the cost of the relocation, either as a result of his having damaged the cable or because it was forced to take actions to prevent future damage to the cable.

It is apparent that SCB, in the prior litigation against Presley, proceeded on two theories of recovery. First, defendant charged that Presley had shot and damaged its cables thereby entitling it to recover damages sustained as a result of his actions, including the cost of relocating the cables. Secondly, SCB claimed that its cables were lawfully on Presley's property, either as a result of its agreement with the Power Association or because of a statutorily created right-of-way, and that Presley's remedy was to seek damages in a court of competent jurisdiction. Because Presley failed to do so and instead took the law into his own hands, SCB was forced to relocate its cables and in the process relinquish its legal rights, thus giving it a right to proceed against Presley.

not specifically deny that he demanded this payment; rather, he states in general terms that he told SCB he would cut the cable if the company did not "settle" the matter with him by that time. The court would note that Presley has not indicated that he was willing to "settle" for anything other than a payment of $10,000 or removal of the cables.

Probable cause is not to be equated with absolute certainty as to the legal viability of a claim, nor even reasonable certainty. Rather, what is necessary is that the plaintiff have had a reasonable basis in law for asserting the claim. In fact, a party may "reasonably submit a doubtful issue of law where it is uncertain which view the court will take." *Prosser and Keeton* § 120, at 893.

Based on the facts known to SCB when it filed suit against Presley, SCB believed Presley had damaged its cables. Destroying equipment belonging to the telephone company, whether intentionally or negligently, is a criminal act for which penalties are provided. Miss.Code Ann. § 77–9–73 (1972).[7] SCB claimed in the prior lawsuit, based on Miss. Code Ann. § 77–9–73, that it was entitled to collect for damage it sustained as a result of Presley's having destroyed its cables. Since the company could have initiated criminal proceedings against Presley for his alleged conduct, the filing of a civil suit for damages for that same conduct demonstrates the existence of probable cause.[8]

SCB also asserted in the former action that it had a legal right to be on the cemetery property and that, because of the actions of Presley, it was forced to give up that right at a substantial cost. In support of its claim that its cables were lawfully on the property, defendant relied on its agreement with the Power Association granting it the right to joint use of the Association's poles. The Power Association, it claimed, had acquired a right-of-way across plaintiff's property by prescription and was legally capable of extending its right-of-way to the SCB. Further, SCB contended that under Mississippi law, even if the telegraph equipment had been placed on the property mistakenly, without the grant of an easement or permissive right-of-way, once the line was constructed across the property, Presley's remedy was not to resort to threats and ultimatums but rather to seek damages in a court of law. In this vein, Miss. Code Ann. § 77–9–713 (1972) provides that

telegraph and telephone companies or associations shall be responsible for any damages which any person shall sustain by the erection, continuance and use of telephone and telegraph lines and fixtures thereof. In any action for recovery thereof brought by any owner or possessor of land over or along which such line may run, *damages shall be assessed for the permanent continuance of such line and fixtures, and on payment thereof, the right to continue and use such line and fixtures shall exist as if by leave and license of the owner of land.* (emphasis added).

Based on this provision SCB argues that it had a statutorily created right-of-way across plaintiff's property, and that plaintiff impeded its use of that right-of-way, giving rise to a cause of action for damages.

The court need not determine whether the grounds which SCB raised in support of its claim against Presley were legally correct and of unquestionable validity. Rather, what is necessary is that the claims asserted have been arguably cognizable based on applicable legal principles. And, in the court's opinion, the claims put forward by SCB based on the facts believed by it to have existed, whether or not meritorious, were not unreasonably asserted.[9]

---

7. Under Miss. Code Ann. § 77–9–73, it is a misdemeanor for one to intentionally or negligently in any wise obstruct, injure, break or destroy, or any manner interrupt any telegraph or telephone line, or communication thereon between any two points by or through which the said lines may pass....

8. Under the circumstances, it seems that SCB chose the less intrusive of the alternatives available to it, seeking as it did to impose civil, as opposed to criminal, liability upon Presley.

9. SCB takes the position that the court's denial of Presley's motion for directed verdict indicated that the court thought probable cause existed and that the jury was obviously of the same opinion inasmuch as it was unable to reach a verdict for defendant. In the court's opinion, the hung jury, together with the court's treatment of Presley's motion for directed verdict, while certainly not conclusive, is consistent with an inference that probable cause did in fact exist.

They were of at least arguable viability which leads the court to conclude that, as a matter of law, SCB had probable cause to institute the proceeding against Presley.[10]

In addition to its claim for malicious prosecution, Presley has asserted a claim against SCB for "outrageous conduct." Specifically, plaintiff's complaint charges that the defendant's conduct was "so outrageous as to show a willful and utter disregard for the right of the Plaintiff and to show total disregard for the consequences of the facts." The conduct to which Presley refers is SCB's conduct in not having compensated or offered to compensate him for being on his property, for failing to attempt to work out an arrangement with him, for failing to file an eminent domain action, and by "willfully and arbitrarily circumventing the law and arbitrarily filing the lawsuit against the plaintiff when SCB knew that it was not in the legal right," all of which, according to the complaint, "shows that the defendant was willfully and maliciously prosecuting this action for its own personal vendetta against the plaintiff."

A review of the complaint reveals that the only actions of which plaintiff complains in support of his charge of "outrageous conduct" are the same as those alleged to support his claim for malicious prosecution. As to claims of "outrageous conduct," the Mississippi Supreme Court has adopted the position that

[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally—or even unintentionally yet the results being reasonably foreseeable—Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has been no physical injury. In such instances, it is the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress.

*Sears Roebuck & Company v. Devers*, 405 So.2d 898, 902 (Miss.1981). Thus, in order to recover such damages, the defendant's conduct must have been extremely outrageous. In the case at bar, all that is alleged to support plaintiff's charge that SCB engaged in outrageous conduct is plaintiff's claim that SCB filed a lawsuit against him which was legally baseless. This, in the court's opinion, is obviously insufficient to support plaintiff's claim, particularly in view of this court's finding that SCB had probable cause to institute the proceeding.

Accordingly, the court is of the opinion that defendant's motion for summary judgment should be granted. A separate judgment shall be entered pursuant to Federal Rule of Civil Procedure 58.

---

10. During the course of the trial, the parties agreed and stipulated on the record that SCB would dismiss that part of its claim seeking damages for the cable which remained on the cemetery property and Presley would allow SCB to enter the property, in the presence of a United States Marshal, to remove the cables. After unsuccessful efforts to arrange removal of those cables, SCB learned that Presley had himself removed the cables and, according to SCB employees had cut the cable in twenty-one places. The company also claimed that the cable he provided them was substantially less than they had originally placed across the property. Accordingly, SCB moved to cite Presley for contempt of the court. These facts are recited by the plaintiff, but do not appear to form any part of the basis of his claim for malicious prosecution since, in his brief, he states that he "filed the suit for malicious prosecution against [SCB] for filing a suit against him and costing him all of this money, they had no basis for doing so and no probable cause." Accordingly, it is unnecessary for the court to consider what, if any, effect the motion for citation for contempt has in this case.