# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-01240-SCT

*JERRY MOON AND SYLVIA MOON*

*v.*

*CONDERE CORPORATION D/B/A FIDELITY TIRE
AND RUBBER COMPANY*

## CONSOLIDATED WITH

## 92-CA-01245-SCT

*THOMAS YOUNG*

*v.*

*CONDERE CORPORATION D/B/A FIDELITY TIRE
AND RUBBER COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/92 |
| TRIAL JUDGE: | HON. RICHARD T. WATSON |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDWIN E. KERSTINE |
| ATTORNEYS FOR APPELLEE: | PEYTON S. IRBY |
| | RICKY G. LUKE |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | REVERSED AND REMANDED - 3/27/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/17/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. This is a malicious prosecution case which arises out of a dispute involving former employees of a manufacturing concern and its successor company. The company sued for defamation. Its suit was dismissed and the employees in turn, sued for malicious prosecution. We conclude that the summary

judgment granted the company was in error. We reverse and remand for further proceedings.

## I.

¶2. In the summer of 1986, it was announced that Armstrong Tire company would close its Natchez plant. Condere Corporation (Condere), a Delaware Corporation organized by former management employees of Armstrong Tire, purchased the Natchez plant effective March 17, 1989, and began manufacturing tires under the name of Fidelity Tire Manufacturing Company (Fidelity), a division of Condere. When Fidelity began operations, it hired some of the former Armstrong employees, while not hiring others, including the appellants Jerry Moon and Thomas Young. Subsequently, approximately twenty-six of the former Armstrong employees filed suit to be reinstated as employees, and Jerry Moon joined in that suit.

¶3. In connection with that suit, a Nashville attorney Dennis Tomlin was hired to look into the ownership structure of Condere. Tomlin, on April 5, 1988, wrote a letter to Jerry Moon wherein he laid out certain factual allegations which, if true, would prove that Armstrong Tire and Condere Corporation were linked to each other. Specifically, the letter stated that Condere Corporation was owned 100 percent by Armtek, which is the holding company for Armstrong. Tomlin's information was inaccurate. It was based on improper entries in two national publications, the Directory of Corporate Affiliations, published by the McMillan Directory Division of the National Register Publishing Company and American Corporate Families, published by Dunn & Bradstreet, as well as an employment advertisement by Armstrong in a Nashville newspaper.

¶4. Condere applied for a ten year tax exempt status under Mississippi law. One requirement for eligibility for the tax exempt status was that the applicant, Condere, had to be a "new business" in Mississippi. On July 5, 1988, at a hearing convened for the purpose of considering Condere's request, Jerry and Sylvia Moon appeared and made the following statements to which Condere took exception. Jerry Moon stated:

> I just believe there is a lot more laying [sic] there that the Board of Supervisors needs to look into. I think the record is going to show that when you talk about Fidelity or Condere Corporation, whichever you prefer, it's going to show that the information that we have still shows that it's still Armstrong.

During the same meeting, Sylvia Moon stated:

> We understand that Fidelity has asked for a large tax break which, of course, we just heard. Our information shows that Armstrong still controls the Natchez plant which is known as Fidelity and we feel that it would bring an undue burden on the taxpayers.

¶5. These statements were broadcast by KNOE-TV (Channel 8) in Monroe, Louisiana, and seen by viewers in Mississippi. On July 14, 1988, acting on behalf of Condere, Scott Kern wrote the Moons informing them that their statements were false and asked that they make retractions. Kern was told to contact the Moons' attorney William Guy. On August 17, 1988, Kern wrote Guy explaining the corporate structure of Condere and requested that the Moons retract their statements. He also stated that "[i]f a correction has not been publicly made by next Thursday, August 25, 1988, I will instruct our counsel to file suit in the Federal District Court in Vicksburg the following day." There was no

retraction made and Condere filed a slander suit against the Moons on August 26, 1988. About four months later, appellant Thomas Young sent a letter to the editor of a local Natchez newspaper which included the allegations contained in the letter from Tomlin (that Condere was still linked to Armstrong) and added that "Fidelity Tire Company has accepted federal money to 'train' men to do jobs they have had for years!" On November 18, 1988, Kern wrote a letter to Young demanding a retraction. Young, however, issued no such retraction and Condere filed suit for defamation on December 1, 1988 in the United States District Court for the Southern District of Mississippi, Western Division.

¶6. On October 11, 1989, Judge William Barbour found that "Condere Corporation was, at the time of the statement, a vortex public figure in the context of *Ferguson v. Watkins*, 448 So. 2d 271 (Miss. 1984). In the language of the case law of this state, their activities were the subject of fair comment." It further held that Condere had failed to prove that the Moons or Young "knew that their statements were false or entertained any doubt as to their truth whatsoever." Additionally, the court stated that "the record is devoid of any evidence of actual injury suffered by Condere." Therefore, the case was dismissed on a summary judgment motion filed by the defendants.

¶7. On August 25, 1989, and November 29, 1989, respectively the Moons and Thomas Young filed suits against Condere in the Circuit Court for Adams County, Mississippi for malicious prosecution, abuse of process, and intentional infliction of emotional distress. The trial court found that Condere did have probable cause based on the fact that the United States District Court found elements of a defamatory action. The court also held that there was no basis for the plaintiffs' claims of abuse of process and intentional infliction of emotional distress. From this ruling, the Moons and Thomas Young appeal.

## II.

¶8. This Court exercises de novo review on a trial court's decision to grant summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988). Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving party is entitled to a judgment as a matter of law. To prevent the trial court's grant of summary judgment, the non-moving party must establish a genuine issue of material fact. *Lyle v. Mladinich*, 584 So. 2d 397, 398 (Miss. 1991). If there are any genuine issues of material fact proven, the lower court's decision to grant summary judgment will be reversed. *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983).

### a.

¶9. In order to maintain a suit for malicious prosecution, the plaintiff must prove the following elements by a preponderance of the evidence:

> (1) The institution or continuation of original judicial proceedings, either criminal or civil;
>
> (2) By, or at the insistence of the defendants;
>
> (3) The termination of such proceedings in plaintiff's favor;
>
> (4) Malice in instituting the proceedings;

(5) Want of probable cause for the proceedings; and

(6) The suffering of damages as a result of the action or prosecution complained of.

*C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1099-1100 (Miss. 1992); *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991); *Miss. Road Supply v. Zurich-American Insurance Co.*, 501 So. 2d 412 (Miss. 1987); *Royal Oil Co., Inc. v. Wells*, 500 So. 2d 439, 442 (Miss. 1986); *Pugh v. Easterling*, 367 So. 2d 935, 937 (Miss. 1979).

¶10. The Moons and Young assert that the goal of Condere's suit against them was to prevent them from "speaking out to the Adams County Board of Supervisors against a tax abatement sought by Condere Corporation." They claim that the trial court erred in finding that Condere had probable cause in initiating their slander suits against the Moons and Thomas Young. Condere contends that it had probable cause in initiating its suit against the Moons and Thomas Young based on its reasonable belief that the false statements made by the appellants were attempts to "paint the corporation as the perpetrator of a fraud."

¶11. To establish probable cause there must be a "concurrence of an honest belief in the guilt of the person accused and reasonable grounds for such belief." *C & C Trucking Co. v. Smith*, 612 So. 2d at 1100 (citing *Strong v. Nicholson*, 580 So. 2d at 1294). Although a malicious prosecution plaintiff must show lack of probable cause, "proof of lack of probable cause on any one element of the crime charged and which forms the basis of the action is sufficient to establish this element of the tort." *C & C Trucking Co. v. Smith*, 612 So. 2d at 1100 (citing *Strong v. Nicholson*, 580 So. 2d at 1294-1295).

¶12. "Probable cause is determined from the facts apparent to the observer when prosecution is initiated. When the facts are undisputed, it is the function of the court to determine whether or not probable cause existed." *Owens v. Kroger Co.*, 430 So. 2d 843, 846 (Miss. 1983). If the facts are in dispute, however, it is a jury question, based upon proper instructions, to determine whether probable cause existed. *Id.* For purposes of a malicious prosecution action, probable cause means reasonable cause. *Presley v. South Central Bell Telephone Company*, 684 F.Supp. 1397, 1399 (S.D. Miss. 1988). "So long as the instigator of the action 'reasonably believed he [had] a good chance of establishing [his case] to the satisfaction of the court or the jury[,]' he is said to have had probable cause." *Id.* (quoting W. Prosser and W. Keeton, The Law of Torts § 120, at 893 (5th ed. 1984)).

¶13. In the instant case, Condere corporation filed suits against Jerry Moon, Sylvia Moon, and Thomas Young alleging that they made defamatory statements concerning the ownership of Condere while implying that Condere was fraudulently and dishonestly attempting to obtain tax credits from the county to which they were not entitled.

¶14. Condere objected to the statements made by Jerry and Sylvia Moon on July 5, 1988 while appearing at a meeting of the Adams County Board of Supervisors.

¶15. In its defamation suit, Condere further complained of an article written to the Natchez Democrat on November 16, 1988 by Thomas Young claiming that Condere was linked to Armstrong and that Fidelity Tire had accepted federal funds to "'train' men to do jobs they have had for years. . . ."

¶16. To establish a claim for defamation, an ordinary plaintiff must show the following:

(1) a false and defamatory statement concerning the plaintiff;

(2) an unprivileged publication to a third party;

(3) fault amounting at least to negligence on the part of the publisher; and

(4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Blake v. Gannett Co., Inc.*, 529 So. 2d 595, 602 (Miss. 1988) (citing *Chatham v. Gulf Pub. Co., Inc.*, 502 So. 2d 647, 649 (Miss. 1987)). Where the defamed party is a public figure, however, such party is prohibited from recovering damages unless that party proves that the statement was made with actual malice--that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *Blake v. Gannett Co., Inc.*, 529 So. 2d at 600-601; *See Curtis Publishing Co. v. Butts*, 388 U.S. 130, 164, 87 S.Ct. 1975, 1996, 18 L.Ed.2d 1094 (1967); *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 686 (1964).

¶17. This Court has held that private individuals who become "limited purpose" or "vortex" public figures may also be subjected to this "malice standard of proof." *Blake v. Gannett Co., Inc.*, 529 So. 2d at 600-601; *Ferguson v. Watkins*, 448 So. 2d 271 (Miss. 1984). "Such a person is one who is otherwise a private figure but who thrusts himself or becomes thrust into the vortex of a matter of legitimate public interest." *Blake v. Gannett Co., Inc.*, 529 So. 2d at 601 (quoting *Ferguson v. Watkins*, 448 So. 2d at 277).

¶18. The United States District Court for the Southern District of Mississippi found, based upon the evidence presented, that the statements made by the Moons and Young "contain[ed] underlying factual allegations that would be defamatory if expressly made." The court also expressed that "[t]he meaning of the statements is clear: that Condere and Armstrong were related, and thus Condere's application for tax abatement was fraudulent." Thus, the first element of Condere's defamation claim was resolved in its favor.

¶19. The court then proceeded to find, however, that Condere was a vortex public figure, and that "their activities were the subject of fair comment." Quoting *Ferguson v. Watkins*, the court stated: "[a]ny person who becomes involved, voluntarily or involuntarily, in any matter of legitimate public interest--and this certainly includes the method of administration of any program of services financed in whole or in substantial part by public monies--becomes in that context a vortex public figure who is subject to fair comment."

¶20. The court further noted that Condere's ownership structure was inaccurately disclosed in at least two national corporate reference guides and held that Condere failed to produce any evidence which would show that the appellants, defendants in the defamation action, knew that their statements were false. The court stated that "[t]he most that can be said is that the Defendants should not have relied on the information they had received, but that misfeasance only rises to the level of simple negligence." Thus, Condere, as a vortex public figure, could not prove the actual malice necessary for recovery. Additionally, the court held that the record was "devoid of any evidence of actual injury

suffered by Condere."

¶21. For purposes of this appeal, the initial inquiry is whether Condere had probable cause for initiating their defamation suits against Jerry Moon, Sylvia Moon, and Thomas Young. As long as Condere reasonably believed that it had a good chance of establishing the elements of its case to the satisfaction of the court or the jury, it had probable cause to bring their suit. *See **Presley v. South Central Bell***, *supra*. Condere established that the appellants made false and defamatory statements concerning Condere. However, Condere was found to be a "vortex public figure" which was subject to fair comment based on their status as one of two major industrial plants in the Natchez, Adams County area, their achievement of notoriety as a result of their failure to rehire many of Armstrong's former employees, and their seeking of a large tax abatement.

¶22. The privilege that extends to comments surrounding vortex public figures may only be abused where such comments are made with the knowledge of their falsity or in reckless disregard of their falsity. *See **Blake v. Gannett Co., Inc.***, *supra*; ***Curtis Publishing Co. v. Butts***, *supra*. The information relied upon by the Moons at the Adams County Board of Supervisors hearing and Thomas Young in his article was based in large part on the findings of Dennis Tomlin. His findings were based on disclosures of Condere's ownership structure in two national corporate reference guides and an employment advertisement in a Nashville newspaper which, only later turned out to be inaccurate. Young also relied upon a letter written by Lisa Spruill, a Special Assistant Attorney General, to Wesley Cooper on June 20, 1988 stating that Armstrong Tire Company was "now doing business as Fidelity Tire Manufacturing Company."

¶23. There was no evidence presented that Condere ever contacted the Moons or Thomas Young prior to their statements to inform them of Condere's true ownership structure. In fact, Dennis Terwilliger, the President and Chief Executive Officer of Condere, admitted in a letter that he wrote to the employees of Fidelity Tire that after studying the accusations against Condere, he could see how some people "might be misled into believing that Armstrong could be Condere's owner." As found by the United States District Court, the appellants' "misfeasance" in relying on the information they received concerning Condere's corporate structure "only rises to the level of simple negligence," rather than actual malice. A fair minded jury could conclude that Condere could not have reasonably believed that the Moons or Thomas Young had actual knowledge of the falsity of their statements.

¶24. Moreover, Condere has not demonstrated proof of any damages from these statements whatever. It obtained the tax exemption. There is no showing that Condere suffered economically as a result of these statements. In the absence of damages a defamation suit of this type must fail. It follows that a fair minded jury might conclude that it was brought without probable cause.

¶25. The trial court's grant of summary judgment must be reversed.

**b.**

¶26. The appellants claim that the trial court erred in granting the defendant's motion for summary judgment against their claim of abuse of process because Condere filed its suits, not to enforce a legal remedy, but to silence the people who were challenging the corporation. Here it appears that the appellants have mistakenly confused the tort of "abuse of process" with that of "malicious prosecution."

¶27. The torts of malicious prosecution and abuse of process can be distinguished. "An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued." *State, Use and Benefit of Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975). To maintain an action for abuse of process, the plaintiff must establish: "(1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity." *Id.*

¶28. In *Edmonds v. Delta Democrat Publishing Co.*, 93 So. 2d 171, 230 Miss. 583 (1957), this Court expressed:

> [t]ypical of the cases where the action of abuse of process will lie is where through the employment of process a man has been arrested or his property seized in order to extort payment of money from him, even though the claim be a just one other than in that suit, or to prevent a conveyance, or to compel him to give up possession to some thing or value, when such were not the legal objects of the suit.

*Id.* at 594. The court noted that the defendant's complaint was not based on any perversion of any process, rather it was based simply on the filing of the suit. *Id.* at 593. It further stated that "[i]t cannot be argued that the process of the court was abused by accomplishing a result not commanded by it or not lawfully obtainable under it when the only process involved was a simple summons to defend the suit." *Id.* at 593-94.

¶29. This Court has stated that an action for abuse of process may arise where there is a "malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained." *State, Use and Benefit of Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975). In *Turner*, where the appellants had been arrested for hunting deer in a closed season, the appellants argued that there was a perverted use of the process in that the defendants maintained an ulterior motive to collect fees from the appellants, make a personal record for themselves and to confiscate the appellants' guns. *Id.* This Court ruled that the appellants' claim lacked merit because the assessment of fines and court costs, the favorable reflection upon the arresting officers' records, and the confiscation of the appellants' guns were all legitimate, natural consequences flowing from the appellants' arrest. *Id.*

¶30. In the instant case, the appellants allege that the perversion of process was Condere's attempt "to sue the Moons and Mr. Young into silence" and "chill their First Amendment rights." This claim is without merit. As the Adams County Circuit Court noted, the only process involved in this case was the summons. There were no arrests made, and there was no seizure of property. Thus, there was no improper use of process after it had been issued. **c.**

¶31. The appellees contend that the appellants' inability to offer evidence of damages is an alternative basis for affirming the trial court's decision. Neither the Moons nor Mr. Young incurred attorney's fees in defending against the suit by Condere. The appellants, however, do claim that they suffered

emotional distress as well as damages to their reputation within the community and other miscellaneous expenses for time expended as a result of the lawsuit by Condere. The appellants made reference to an editorial written to the <u>Natchez Democrat</u> on November 27, 1988, by John Matthews, which spoke favorably of Condere's suit against the Moons and Young. Moreover, during the deposition of Jerry Moon, he offered the names of numerous individuals throughout his community that had shunned him as a result of the suit by Condere. The Moons also claimed damages from personal expenses incurred in defending the lawsuit filed by Condere, such as a trip to New Orleans to answer interrogatories, photocopying documents and depositions, and long distance phone calls to confer with their attorneys. The trial court held as a fact, based upon all of the documents, that there was no intentional infliction of emotional distress and no basis for such a claim. The trial court did this in spite of the Moons' and Young's deposition testimony as well as the testimony of the Moons' family physician Dr. Jerry Iles who testified that Sylvia Moon's problems increased during the time of the suit and that the suit had upset her. Dr. Iles testified that he had not treated Jerry Moon for any emotional problems, however, he did state that anxiety could cause symptoms related to gastrointestinal problems.

¶32. Where the evidence creates a question of fact concerning which reasonable jurors could disagree, a trial court should submit the issue to the jury. *Vines v. Windham*, 606 So. 2d 128, 131 (Miss. 1992). Whether the appellants sustained damages from Condere's suit is a question of fact concerning which reasonable jurors could disagree. *Page v. Wiggins*, 595 So. 2d 1291, 1293 (Miss. 1992); *Royal Oil Co., Inc. v. Wells*, 500 So. 2d at 441.

¶33. Considering the evidence presented within the record in the instant case, the issue of whether the Moons and Young sustained damages as a result of Condere's suit should be determined by the jury. A reasonable juror could have concluded that the Moons and Young sustained damages.

## CONCLUSION

¶34. For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded to that court for further proceedings.

¶35. **REVERSED AND REMANDED.**

**SULLIVAN, P.J., PITTMAN AND McRAE, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND MILLS, JJ. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ. PRATHER, P.J., NOT PARTICIPATING.**

 **SMITH, JUSTICE, DISSENTING:**

¶**36.** Based upon the undisputed "material" facts Condere had probable cause to file the underlying defamation actions against the Appellants. The Appellants failed to prove or create "material" factual

issues on the essential elements of their claims for abuse of process and intentional infliction of emotional distress by Condere. The circuit judge was correct in granting summary judgment in favor of Condere Corporation.

¶37. The uncontroverted facts establish that the statements made by the Moons and others concerning Condere Corp. which initiated the federal litigation were clearly defamatory as a matter of law, and in every respect, absolutely untrue. The basis for Federal Judge William Barbour's grant of summary judgment in favor of the Moons in Condere Corp.'s suit against them was that Condere was a "vortex" public figure and therefore, required to prove actual malice and actual damages, but that Condere could not prove actual malice. Judge Barbour found that the statements made by the Moons concerning a supposed relationship between Armstrong and Fidelity regarding who controls the Natchez plant was defamatory in that the clear meaning of the statements made by the Moons was that Condere and Armstrong were related and thus Condere's application to the Board of Supervisors of Adams County for a tax abatement was fraudulent. Scott Kern, Vice President of Condere, set out the true ownership by affidavit and served notice to the Moons in writing that their allegations were false and asked for a retraction. The Moon's counsel, William Guy, was also informed accordingly by Kern. The Moons never retracted their false statements and suit was filed by Condere. The affidavit of Kern has not been refuted by the Moons offering any counter evidence. The sole evidence in this record shows that Condere Corp.'s Natchez plant was not owned or controlled in any manner by Armstrong.

¶38. The majority faults Condere because no one from "Condere ever contacted the Moons prior to their statements to inform them of Condere's true ownership structure." *Majority* at 11. What difference would that have made? Even when subsequently advised of the truth and given the opportunity to retract the false statement, the Moons steadfastly refused. Malice, although normally a question of fact and determined by the jury, may also be a question of law when only one conclusion may be reasonably drawn from the evidence. *Owens v. Kroger Co.*, 430 So. 2d 843, 848 (Miss. 1983). What was the objective of the Moons in making such a broad and false statement in charging Concere of fraudulent conduct? Apparently they did so with utter disregard for the truth as they relied totally upon the comments of others, never once bothering to check out the matter themselves as to truthfulness of the information.

¶39. Malice, "refers to the **defendant's objective**, not his attitude." *Nassar v. Concordia Rod and Gun Club, Inc.*, No. 93-CA-00187, October 24, 1996, (Smith, Justice, Dissenting) *citing Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991)(emphasis added).

¶**40.** In *Nassar* this Court found insufficient probable cause by Robert Canady, an employee of Concordia in his probable cause determination prior to filing charges against Mike Nassar. This Court stated:

> Therefore, the determinative issue for the Court is whether or not Canady was reasonable in his belief that Mike Nassar was the unknown shooter when Canady filed his afidavit. **We find that Canady likely did not conduct an adequate investigation given the opportunity he had to readily discover additional information.** Thus, Canady did not objectively have a reasonable belief of who he thought had committed the crime prior to filing the charges.

*Nassar*, at 21.

¶41. This Court in *Nassar* went further to remind of our established precedent that this issue is not always a factual decision for a jury, as the Court, in footnote 10 stated, "Nassar contends that because the second prong of the probable cause test is a reasonableness test that it should always be a jury question making summary judgment improper. However, this argument is contrary to our long adhered reasoning and holding of *Whitfield v. Westbrook*, 40 Miss. 311, 317(1866)." Finally, the *Nassar* Court concluded:

> The Court is presented with a probable cause determination. **Cannady should have tried to locate Mike Nassar, or confirm his identity in some other way, to verfiy his belief prior to filing the charges. It appears that a reasonable person would have done so,**. . . .

*Nassar*, at 21. (Emphasis added).

¶42. If Cannady was required to use other means and seek other measures to "verify his belief prior to filing the charges," surely the Moons likewise should have used other means to personally determine the truthfulness of their information, all of which was received second hand from other sources. They did not do so, thus cannot have acted as reasonable individuals. The trial court was correct as a matter of law in granting summary judgment to Concordia under these facts. I would affirm the trial court on this issue.

¶43. Next, concerning whether the Moons suffered any damages, the majority finds fault with the trial judge's finding of "fact based upon all of the documents that there was no intentional infliction of emotional distress and no basis for such a claim." *Majority* at 14. The majority cites to the "Moon's family physician Dr. Jerry Iles who testified that Sylvia Moon's **problems increased** during the time of the suit and that **the suit had upset her**." *Majority* at 14 (emphasis added). The majority believes a jury should have this issue submitted to it for a decision based upon this slight evidence.

¶44. The meager evidence of emotional damages here can be likened to that in *Morrison v. Means*, 680 So. 2d 803 (Miss. 1996), where this Court found that "there is not enough evidence presented to support the claim of mental anguish as a result of the conduct due to a lack of an injury. Means testified that he lost some sleep. He stated that,

> [i]t has affected me emotionally in that I have naot been able to sleep many nights because I feel like I've been done wrong. I've been cheated out of money that I need to help support my family.

*Means*, 680 So. 2d at 806.

¶45. The *Means* Court, in finding that Means' distress did not rise to the level of anxiety or anguish required to support an award for emotional distress, also cited to *Strickland v. Rossini*, 589 So. 2d 1268 (Miss. 1991), stating:

> [w]e held that evidence that the plaintiff was "very depressed. . . .[and] very upset over all this and emotional . . . . [and] not able to sleep," was insufficient to sustain a damages for mental anguish. *Strickland*, 589 So. 2d at 1275-76 (emphasis added). The testimony towards mental anguish in the Strickland case was the equivalent, if not more convicing, to that in the case sub judice. However, we did not find it adequate enough to support the award of damages for

mental anguish, nor can we now hold that the evidence in the case at hand supports an award of damages for mental anguish. The jury below was erroneous in its award of damages.

> **Under our prevailing case law, there is no evidence of mental anguish in this case. Morrison's conduct did not reach the level of outrageous conduct this Court has required for mental anguish.**

*Means*, 680 So. 2d at 806. (Emphasis added).

¶46. The evidence of the Moons is likewise insufficient to even allow a jury to consider the issue. The trial court was imminently correct and should be affirmed on this issue. Based upon *Nassar, Strickland* and *Means*, I disagree with the majority.

¶47. I respectfully dissent.

**ROBERTS AND MILLS, JJ., JOIN THIS OPINION.**


**MILLS, JUSTICE, DISSENTING:**


¶48. I respectfully dissent from the majority in this case. The Moons and Youngs set in motion the series of statements and acts from which they now complain. It is my opinion that the lower court correctly analyzed the facts and issues before it and applied the proper law. This tawdry cause of action should have been and was dismissed by the Adams County Circuit Court. I would affirm the lower court granting of summary judgment and would not waste any more ink on this case.

**ROBERTS AND SMITH, JJ., CONCUR.**