# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-IA-01302-SCT

*KATHERINE GRACE SHORT*

*v.*

*DARREN VERSIGA*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/30/2018 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| TRIAL COURT ATTORNEYS: | CHRISTOPHER EDWARD SMITH |
| | GRADY MORGAN HOLDER |
| | SAMUEL M. BAYARD |
| | MARY ELLEN ROY |
| | ALONZO WICKERS, IV |
| | SCOTT TIMOTHY ELLZEY |
| | KATIE RYAN VAN CAMP |
| | EDWARD C. TAYLOR |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER EDWARD SMITH |
| | GRADY MORGAN HOLDER |
| ATTORNEYS FOR APPELLEE: | EDWARD C. TAYLOR |
| | KATIE RYAN VAN CAMP |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 10/03/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Katherine Grace Short appeals the circuit court's change of venue in her defamation case from the Circuit Court of the First Judicial District of Harrison County, Mississippi, to the Circuit Court of Jackson County, Mississippi. Because a substantial event that caused

the injury occurred in the First Judicial District of Harrison County, venue is proper in that county. Accordingly, the circuit court's judgment is reversed and remanded.

## FACTS AND PROCEDURAL HISTORY

¶2. On the evening of August 1, 1975, Short's husband, Tye Breland, died from a gunshot wound to the chest at their home in Pascagoula, in Jackson County, Mississippi. The Jackson County coroner's office determined that Breland's death was caused by an accidental, self-inflicted gunshot wound from a .410 shotgun. Short was not charged with Breland's death.

¶3. Forty-two years later, on August 12, 2017, *Cold Justice: Beyond the Grave*, a true-crime documentary (the episode), premiered on the Oxygen Network.[1] The episode, which aired nationally, focused on Breland's death, and considered whether Short murdered her late husband. During the episode, crime experts Kelly Siegler (identified as a prosecutor) and John Bonds (identified as a homicide investigator) investigated Breland's death. Darren Versiga, a law-enforcement officer with the Pascagoula Police Department, assisted the investigation. The investigation team exhumed Breland's body, prepared a mockup of the crime scene, conducted ballistics testing, and interviewed numerous witnesses to determine whether Breland's death was a suicide, an accident, or a homicide. The team concluded that Breland did not commit suicide. They identified Short as a suspect in Breland's death and turned over their investigation to the Jackson County District Attorney's Office. According to the team, they put together enough information for a circumstantial case of murder.

¶4. On February 21, 2018, Short filed a complaint against Siegler, Bonds, Versiga, and

---

[1] The Oxygen Network is associated with the NBC Universal Network.

various media entities in the Circuit Court of the First Judicial District of Harrison County and alleged defamation and tortious invasion of privacy. Versiga filed an answer and defenses to Short's complaint. Versiga then filed a motion to transfer venue to the Circuit Court of Jackson County. In his motion, Versiga argued that the Circuit Court of Jackson County was the proper venue under Mississippi law because it was where a substantial alleged act or omission occurred or where a substantial event that caused the injury occurred. Versiga further argued that the Circuit Court of Jackson County was the proper venue "as it is the county in which [he] resides."

¶5.     After a hearing on the motion, the circuit court found that "Jackson County [wa]s where the investigation of the case and the majority of the acts complained of occurred." The circuit court further found that "Versiga is a resident of Jackson County and may not be found in Harrison County." As a result, the circuit court granted Versiga's motion to transfer venue and transferred the case from the Circuit Court of the First Judicial District of Harrison County to the Circuit Court of Jackson County. Short timely filed a petition for interlocutory appeal. The petition for interlocutory appeal was granted by this Court on November 14, 2018. Because the interlocutory appeal is limited to the issue of venue, the media entities, Siegler, and Bonds were dismissed from the appeal.

**STANDARD OF REVIEW**

¶6.     "This Court reviews a [circuit] court's determinations regarding venue for an abuse of discretion." *Ramsey v. Auburn Univ.*, 191 So. 3d 102, 108 (Miss. 2016) (citing *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1097 (Miss. 2004)). "Of right, the

3

plaintiff selects among the permissible venues, and his choice must be sustained unless in the end there is no credible evidence supporting the factual basis for the claim of venue." ***Id.*** (internal quotation marks omitted) (quoting ***Hedgepeth v. Johnson***, 975 So. 2d 235, 238 (Miss. 2008)).

¶7. "In venue disputes courts begin with the well-pleaded allegations of the complaint." ***Flight Line, Inc. v. Tanksley***, 608 So. 2d 1149, 1155 (Miss. 1992). "These, of course, may be supplemented—and contested—by affidavits or other evidence in cognizable form." ***Id.*** (citing ***Long v. Patterson***, 198 Miss. 554, 562-64, 22 So. 2d 490, 492-93 (1945)).

## ANALYSIS

¶8. In order to establish a claim for defamation, a plaintiff must prove the following elements:

> (1) a false and defamatory statement concerning plaintiff; (2) [an] unprivileged publication to [a] third party; (3) fault amounting at least to negligence on [the] part of [the] publisher; (4) and either actionability of [the] statement irrespective of special harm or [the] existence of special harm caused by [the] publication.

***Franklin v. Thompson***, 722 So. 2d 688, 692 (Miss. 1998) (citing ***Moon v. Condere Corp.***, 690 So. 2d 1191, 1195 (Miss. 1997)). "A cause of action for defamation does not exist in the absence of communication or 'publication' of defamatory statements to a third person, *i.e.*, to one other than the plaintiff." ***Mitchell v. Random House, Inc.***, 703 F. Supp. 1250, 1252 (S.D. Miss. 1988).

¶9. Mississippi Code Section 11-11-3(1)(a)(i) (Rev. 2016) provides four permissible venue options for civil actions of which the circuit court has original jurisdiction: "[(1)] in

4

the county where the defendant resides, or, [(2)] if a corporation, in the county of its principal place of business, or [(3)] in the county where a substantial alleged act or omission occurred[,] or [(4)] where a substantial event that caused the injury occurred." Short asserts that "[t]he initial publication of the [e]pisode [wa]s a . . . substantial injury-causing event." She argues that because the "publication aired in Harrison County . . . , her choice of venue must be honored."

¶10.    In support of her argument that venue is proper in Harrison County, Short cites three federal cases that, while not binding, are informative. In ***Doe v. Lee***, No. 18 C 1193, 2019 WL 247536, at *1 (N.D. Ill. Jan. 17, 2019), plaintiff John Doe, an Illinois citizen, filed a defamation lawsuit against defendant Jessica Lee, a Texas citizen, alleging that Lee "'engaged in a deliberate campaign to destroy [p]laintiff by spreading rumors and lies about [p]laintiff to his social and professional circles as well as the general public online." Lee moved to transfer venue to the Eastern District of Texas. *Id.* at *2. The district court denied Lee's motion to transfer venue and found that venue was proper in the Northern District of Illinois "because the events giving rise to [p]laintiff's defamation claim, *i.e.*, the reputational harm caused by Lee's actions, occurred in Illinois." *Id.* at *4. The court explained,

> "The principal injury giving rise to a defamation claim occur where [plaintiff's] reputation would suffer the most harm—where [he] lives and works and where the people with whom [he] has personal or commercial relationships reside." That Lee acted from Texas when she allegedly posted defamatory statements and salacious content regarding [p]laintiff is irrelevant. Plaintiff's reputational harm gives rise to his defamation claims against Lee. This harm occurred substantially in Illinois, where Plaintiff resides, works, and has many professional and social contacts.

*Id.* at *3 (alterations in original) (citations omitted).

5

¶11. Additionally, in *Capital Corp. Merchant Banking, Inc. v. Corp. Colocation, Inc.*, No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *1 (M.D. Fla. Aug. 27, 2008), the plaintiff filed an internet libel case against several defendants, including Leonard and Francesca Norwich. The plaintiff alleged that the Norwiches, who were residents of Pennsylvania, posted defamatory statements about it on three websites. *Id.* The district court denied defendants' motion to dismiss for improper venue and found that venue was proper in that district. *Id.* at *3. The district court stated,

> [B]ecause the harm from an online defamatory statement can occur in any place where the website or forum is viewed, no one forum should be expected to stand out as a particularly strong candidate for venue. Thus, in the context of defamation and other non-physical torts, courts generally hold that venue . . . is proper in the district where the injured party resides and the defamatory statements were published.

*Id.* (citing *Muse v. Bravo Sports*, No. 4:04-cv-00571, 2005 WL 6050732, at *10-11 (S.D. Iowa July 12, 2005)).

¶12. Moreover, in *Seidel v. Kirby*, 296 F. Supp. 3d 745, 747 (D. Md. Oct. 27, 2017), the plaintiffs, who were all Maryland residents, brought a defamation suit against five out-of-state defendants "in response to alleged abusive behavior that [d]efendants engaged in online." "Plaintiffs did not allege that any [d]efendants engaged in any actions while in or from Maryland, but that the effects of the [d]efendants' actions were felt by the [p]laintiffs in Maryland." *Id.* The defendants moved to dismiss for improper venue. *Id.* at 748. The district court denied the motion and found that "[t]he legally relevant 'occurrence' in a defamation action is where the *publication* occurred, i.e. where third persons were exposed to the material that would tend to damage the plaintiff's reputation." *Id.* at 753. The court

6

explained,

> It would seem that, in the context of defamation publicized over the Internet, such a rule would make venue proper in any district in the United States. The venue statute, however, does not authorize venue in any district where *any* events that gave rise to the action occurred, but rather where a *substantial part* of those actions occurred. Therefore, while it may not always be the case, the district in which a plaintiff resides is often going to be where the substantial part of the *harmful* publication occurred, i.e where people are exposed to the material who may actually know the plaintiff or interact with him in a way that could be affected by the information. The [c]ourt therefore agrees with other courts that have held that "venue . . . is proper in the district where the injured party resides and the defamatory statements were published."

*Id.* (citing *Capital Corp.*, 2008 WL 4058014, at *3).

¶13. Here, similarly as in *Doe*, *Capital Corp.*, and *Seidel*, the allegedly defamatory episode was published simultaneously nationwide. Versiga argues that under Short's theory of the case, because the episode was published nationally, venue would be permissible in all counties. But, as in *Seidel*, our venue statute does not authorize venue in every county where an event occurred. Rather, our venue statute requires a case to be filed "where a *substantial event that caused the injury* occurred." Miss. Code Ann. § 11-11-3(1)(a)(i) (emphasis added).

¶14. In defamation cases, the injury is to one's reputation. Indeed, "[a] defamatory statement is '[a]ny written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt[,] or ridicule, degrade him in society, lessen him in public esteem[,] or lower him in the confidence of the community.'" *Franklin*, 722 So. 2d at 692 (second alteration in original) (citing *Fulton v. Miss. Publishers Corp.*, 498 So. 2d 1215, 1217 (Miss. 1986)).

7

¶15. Short does not allege that the publication of the episode caused her injury, i.e, reputational harm, in every county across the state. Simply because the episode aired in Hinds County, for example, does not make Hinds County a permissible venue since no allegation was made that the publication of the episode in Hinds County caused Short injury. Stated differently, although the publication of the episode in Hinds County was an event, it was not a "substantial event that caused the injury." Instead, Short alleges that the substantial event that caused her injury, i.e., the publication of the episode that caused her reputational harm, occurred in Harrison County. In her complaint, Short addresses her injury and asserts how the publication of the episode caused her reputational harm. Specifically, Short asserts,

> Defendants focused the episode on [Short] and expressly aimed their false and defamatory accusations and insinuations at her, knowing she is a resident of the First Judicial District of Harrison County, Mississippi.
>
> It was the natural and foreseeable result of the episode that Defendants' false and defamatory accusations and insinuations against and about [Short] would be published and republished in the First Judicial District of Harrison County, Mississippi, causing harm, injury, and damage to [Short] in the First Judicial District of Harrison County, Mississippi, where [Short] resides.
>
> Defendants knew, or should have known, and intended that the brunt of the harm the episode caused and continues to cause [Short] would be felt in the First Judicial District of Harrison County, Mississippi, where [Short] resides.
>
> The publication and broadcast of these false and defamatory statements, and the episode as a whole, have injured and damages [Short]'s reputation; have diminished the esteem, respect, goodwill, or confidence in which [Short] is held; have excited adverse, derogatory or unpleasant feelings or opinions against her; and have caused her to suffer loss of income, as well as other damages.

¶16. The record shows that the substantial event that caused Short injury, i.e., the

8

publication of the episode that caused her reputational harm, occurred in the First Judicial District of Harrison County, where Short resides, "where people [we]re exposed to the material who may actually know [Short] or interact with [her] in a way that could be affected by the information," *Seidel*, 296 F. Supp. 3d at 753 (citing *Capital Corp.*, 2008 WL 4058014, at *3), and where Short's "reputation would suffer the most harm—where she lives and works and where the people with whom she has personal or commercial relationships reside." *Doe*, 2019 WL 247536, at *3.

¶17.    Versiga disagrees and argues that Jackson County is the "only" proper venue in this matter because "absolutely no meaningful portion of the events that spurred the allegedly defamatory episode occurred in Harrison County . . . ." Versiga asserts that the "substantial act is the death of Tye Breland . . . and what investigation was done as to the cause of that." This Court disagrees.  Neither Breland's death nor the subsequent investigation was defamatory.  The defendants had a right to investigate Breland's death.  But without the initial publication of the episode, Short would have no defamation claim regardless of what the defendants did or did not do during the investigation.  In other words, had the defendants investigated Breland's death, recreated the crime scene, performed ballistics testing, exhumed the body, and filmed all of it, but never published it, Short would have no defamation claim.  It is the initial publication of the episode from which Short's defamation claim emanates.  Indeed, it is the publication of the episode, not the investigation, that Short claims defamed her.[2]

_____

    [2] Short asserts that the defendants chose to publish certain information in the episode while purposefully withholding favorable information obtained during the investigation.

¶18. Additionally, despite Versiga's assertion, the record shows that "meaningful portion[s] of the events that spurred the allegedly defamatory episode" did occur in Harrison County. For instance, on at least two occasions, Versiga and Siegler came to the First Judicial District of Harrison County in an attempt to conduct an in-person, on-camera interview with Short at her residence. During one scene, while outside of Short's residence, Versiga called Short and the following conversation occurred:

Short:      Hello.

Versiga:    Kathie?

Short:      Yes.

Versiga:    Hey, Darren Versiga. How are you?

Short:      I'm fine.

Versiga:    I need to talk to you. What's a good time that I can meet with you?

Short:      Well, when I have an attorney present.

Versiga:    Okay. Is that what you want?

Short:      Oh, absolutely.

After the conversation, Siegler referred to Short as "one of the smartest suspects that [she has] ever seen."

¶19. Short asserts that "[t]he effect the defendants intend[ed] to achieve by including this narrative in the [e]pisode is obvious: that [Short] would look 'guilty' by virtue of the common misconception that only guilty people ask for a lawyer when contacted by the police." The defendants apparently felt that these "portion[s] of . . . events," which occurred

10

in Harrison County, were "meaningful" because they elected to include them in the episode.

¶20.    Versiga further argues that Short "has not established that any harm has come from the episode in Harrison County, or anywhere for that matter . . . ."  But this is a venue dispute, not a motion for summary judgment.  In venue disputes, we look to the allegations of the complaint.  *Tanksley*, 608 So. 2d at 1155.  In her complaint, Short alleges damage to her reputation and a loss of income as a result of the publication of the episode.  Short's alleged reputational harm as a result of the publication establishes that venue is proper in the Circuit Court of the First Judicial District of Harrison County.

¶21.    Versiga last argues that "[c]learly, Jackson County is the most convenient for the parties due to the fact that all important witnesses and evidence can be found there . . . ."  Despite Versiga's assertion, not all of the "important witnesses and evidence" are located in Jackson County.  Short is from the First Judicial District of Harrison County; Oxygen Media, LLC, is a Delaware limited liability company with its principal office in New York City, New York; Magical Elves, Inc., is a California corporation with its principal office in Encino, California; and Siegler and Bonds are both from Texas.  In fact, Versiga is the only party who resides in Jackson County.  Moreover, the Court can take judicial notice that Harrison County and Jackson County are adjacent counties, with the courthouses less than forty miles from each other.  Thus, Versiga's convenience argument fails.

## CONCLUSION

¶22.    "[V]enue is as much a valuable right to the plaintiffs as it is to the defendants . . . ." *McMillan v. Puckett*, 678 So. 2d 652, 656 (Miss. 1996).  Upon review, there is "'credible

11

evidence supporting [Short's] factual basis for the claim of venue"' in the First Judicial District of Harrison County. *Ramsey*, 191 So. 3d at 107 (quoting *Hedgepeth*, 975 So. 2d at 238). While Jackson County is a permissible venue, "the language of [Mississippi Code Section 11-11-3(1)(a)(i)] acknowledges that venue may be proper in more than one county." *McMillan*, 678 So. 2d at 656. The record shows that a substantial event that caused the injury occurred in the First Judicial District of Harrison County. Accordingly, venue is proper in the Circuit Court of the First Judicial District of Harrison County. As a result, we reverse the circuit court's judgment, and remand this case to be transferred from the Circuit Court of Jackson County to the Circuit Court of the First Judicial District of Harrison County for further proceedings consistent with this opinion.

¶23.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**