## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01344-SCT

*CONG VO VAN, UT THI NGUYEN, LAN THI TRAN AND MINH HOANG VAN*

*v.*

*GRAND CASINOS OF MISSISSIPPI, INC. AND BRUCE LOPRETE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/1999 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | KELLY McKOIN |
| ATTORNEY FOR APPELLEES: | SCOTT DERRICK SMITH |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED -09/28/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/19/2000 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case comes on appeal from the Circuit Court of Harrison County, First Judicial District, where Circuit Judge John H. Whitfield granted summary judgment in favor of defendants Grand Casinos of Mississippi, Inc. and Bruce Loprete in this action for malicious prosecution.

### STATEMENT OF FACTS

¶2. On March 19, 1997, Cong Vo Van ("Cong"), Ut Thi Nguyen ("Ut"), Lan Thi Tran ("Lan"), and Minh Hoang Van ("Minh") collectively the plaintiffs filed an action for malicious prosecution against Grand Casinos of Mississippi, Inc. ("Grand Casinos") and Bruce Loprete ("Loprete") in the Harrison County Circuit Court. Minh and Lan, his wife, were arrested on July 24, 1993, and August 2, 1993, respectively, on charges of cheating at a gambling game in violation of Miss. Code Ann. § 75-76-301(b) and § 75-76-307 (1993). Minh and Lan were employed as card dealers at Grand Casinos located in Gulfport, Mississippi. Both administered playing cards at the mini baccarat tables. Cong and Ut, the parents of Minh, were arrested on August 18, 1993, on charges of participating in a common plan or scheme to cheat at a

gambling game in violation of Miss. Code Ann. § 65-76-301 and § 75-76-307 (1993).

¶3. On July 13, 1993, video surveillance recorded Cong and Ut sitting at a mini baccarat table at which Lan was dealing. The cameras recorded Lan allegedly deviate from the established card-shuffling policy enforced by Grand Casinos. During this time, the mini baccarat players seated at Lan's table, including Cong and Ut, won eleven consecutive games. Prior to Lan's deviation in shuffling, video surveillance revealed sporadic betting patterns by the players. However, during the winning span, the players' wagers greatly increased resulting in a loss to Grand Casinos in excess of $40,000. Lan was later filmed on July 20, 1993, allegedly utilizing a similar "false shuffling" technique.

¶4. On July 19, 1993, video surveillance captured Minh allegedly digress from the established card-shuffling policy at a mini baccarat table. As a result, the mini baccarat players seated at Minh's table, including Cong and Ut, won seven consecutive games. Again, the players' wagers greatly increased during this time in relation to the wagers placed prior to the unusual shuffling technique exhibited by Minh. As a result of these seven wins, Grand Casinos paid the players over $15,000.

¶5. A preliminary hearing was conducted, and indictments were returned against all plaintiffs by a Harrison County grand jury. However, on March 26, 1996, the Harrison County Circuit Court dismissed with prejudice the indictments for failure of the State to provide a speedy trial. Cong, Ut, Lan, and Minh subsequently filed this malicious prosecution action against Grand Casinos and Loprete, director of surveillance at Grand Casinos. Grand Casinos and Loprete filed a motion for summary judgment, which was granted by order of the circuit court on the ground that the dismissal of the prior criminal charges against Cong, Ut, Lan, and Minh on speedy trial grounds was not a "favorable termination" necessary to support a civil action for malicious prosecution. Cong, Ut, Lan, and Minh appealed this determination, and this Court reversed the order of the circuit court, holding that a dismissal of criminal charges on constitutional grounds is a "favorable termination" which would support a subsequent action for malicious prosecution. *Van v. Grand Casinos of Miss., Inc.*, 724 So. 2d 889, 893 (Miss. 1998) (hereinafter "*Van I*"). The case was remanded to the trial court for proceedings consistent with the Court's opinion. *Id.*

¶6. On February 24, 1999, Grand Casinos and Loprete filed a second motion for summary judgment, arguing that there was no issue of fact regarding whether Grand Casinos and Loprete lacked probable cause for instigating the criminal proceedings.[1] The plaintiffs filed a Motion to Dismiss the Defendants' Motion for Summary Judgment. On June 7, 1999, subsequent to a hearing on the matter, the trial court again granted summary judgment in favor of Grand Casinos and Loprete. After the trial court granted the plaintiffs' Motion to Reopen Time for Appeal pursuant to M.R.A.P. 4(h) on August 10, 1999, the plaintiffs filed a notice of appeal on August 13, 1999. The plaintiffs raise the following issues regarding the trial court's grant of summary judgment:

> **I. THE TRIAL COURT ERRED BY FAILING TO COMPLY WITH THE DIRECTIVE OF THIS COURT IN *VAN I*.**

> **II. THE TRIAL COURT ERRED IN FINDING THAT THERE IS NO ISSUE OF FACT REGARDING THE EXISTENCE OF PROBABLE CAUSE.**

## STANDARD OF REVIEW

¶7. This Court employs a de novo standard of review of the trial court's grant of a summary judgment

motion. *Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So. 2d 1351, 1354 (Miss. 1998) (citing **Townsend v. Estate of Gilbert**, 616 So. 2d 333, 335 (Miss.1993)). The evidence is viewed in the light most favorable to the non-moving party, who is to receive the benefit of every reasonable doubt. *Id.* Once the absence of genuine issues of material fact has been shown by the movant, the burden of rebuttal falls upon the non-moving party. *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1213 (Miss. 1996). The non-moving party must produce specific facts showing that there is a genuine material issue for trial. *Id.* (citing M.R.C.P. 56(e); **Fruchter v. Lynch Oil Co.**, 522 So.2d 195, 199 (Miss.1988)). "The non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict." *Id.* at 1214 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

## DISCUSSION OF LAW

### I. THE TRIAL COURT ERRED BY FAILING TO COMPLY WITH THE DIRECTIVE OF THIS COURT IN *VAN I.*

¶8. In order to prevail in a suit for malicious prosecution, the plaintiff must prove the following elements by a preponderance of the evidence:

> (1) The institution or continuation of original judicial proceedings, either criminal or civil;

> (2) By, or at the insistence of the defendants;

> (3) The termination of such proceedings in plaintiff's favor;

> (4) Malice in instituting the proceedings;

> (5) Want of probable cause for the proceedings; and

> (6) The suffering of damages as a result of the action or prosecution complained of.

*C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1099-1100 (Miss.1992); *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss.1991); *Mississippi Road Supply Co. v. Zurich-Am. Ins. Co.*, 501 So. 2d 412, 414 (Miss.1987); *Royal Oil Co. v. Wells*, 500 So. 2d 439, 442 (Miss.1986); *Pugh v. Easterling*, 367 So. 2d 935, 937 (Miss.1979). At issue in this appeal is the fifth element only.

¶9. Cong, Ut, Lan, and Minh (hereinafter "the plaintiffs") argue that by denying their motion to dismiss the defendants' motion for summary judgment and by granting summary judgment to Grand Casinos and Loprete (hereinafter "the defendants") on the issue of probable cause, the trial court erred in failing to comply with the directive of this Court in *Van I,* 724 So. 2d at 893 (Miss. 1998). Again, the issue in *Van I* was the trial court's grant of summary judgment in favor of the defendants based on the finding that, as a matter of law, dismissal on speedy trial grounds was not a favorable termination of the prior proceedings. In their first motion for summary judgment, the defendants briefed the issue of probable cause as well as the issue of favorable termination. The trial court, however, requested that counsel limit oral argument only on the favorable termination issue. The trial court addressed only the favorable termination issue in its grant of summary judgment. The plaintiffs then appealed the trial court's first grant of summary judgment on the favorable termination issue. In *Van I*, this Court held that dismissal on speedy trial grounds is a favorable termination as a matter of law and reversed the ruling of the trial court. *Id.* at 893. The case was remanded

for further proceedings consistent with the opinion. *Id.* The defendants then filed their second motion for summary judgment, arguing again the probable cause issue. The trial court granted this second motion, and such is the subject of the present appeal.

¶10. The plaintiffs here contend that in its opinion regarding the prior appeal, this Court directed the trial court to proceed with trial and that the trial court thus erred in granting the defendants' second motion for summary judgment. The plaintiffs claim that the following statement made by this Court in its opinion mandated that the remainder of the elements of their action be heard by the jury:

> By finding that the State's failure to prosecute properly reflects on the merits of a criminal action and therefore qualifies as a termination in favor of the plaintiff, **the accused is given the opportunity to have his day in court by way of a subsequent trial.** The accused/plaintiff would then carry the burden of proving the elements of malicious prosecution by a preponderance of the evidence. **Whether a plaintiff was maliciously prosecuted is a question of fact properly decided by the jury, not the trial judge.**

*Id.* at 893 (emphasis added).

¶11. The plaintiffs' argument is without merit. The only issue before this Court in *Van I* was the favorable termination issue. In fact, the Court expressly stated, "The issue in the present case pertains solely to the third element of the cause of action." *Id.* at 891. The fact that the Court is determined that the trial court erred in finding that the plaintiffs had not met their burden of proof on one element of their cause of action has no bearing on the ability, or inability, of the plaintiffs to meet their burden of proof on other elements of their cause of action. The Court reversed the judgment of the trial court and remanded the case in *Van I* "for further proceedings consistent with [its] opinion." *Id.* at 893. Again, the Court expressly stated that the issue, and hence its ultimate determination, pertained only to the favorable termination issue. There was no mandate that summary judgment would likewise be improper on any other elements of the plaintiffs' claim. This Court has consistently held that probable cause is a determination of law for the trial judge when the facts themselves are not in dispute. *See, e.g.*, *Moon v. Condere Corp.*, 690 So. 2d 1191, 1195 (Miss. 1997) (quoting *Owens v. Kroger Co.*, 430 So. 2d 843, 846 (Miss.1983)); *Nassar v. Concordia Rod & Gun Club, Inc.*, 682 So. 2d 1035, 1046 (Miss. 1996).

¶12. The plaintiffs also argue that when the trial court granted summary judgment as to the favorable termination issue, implicit in its failure to address the probable cause issue was the trial court's determination that there was an issue of fact regarding the existence of probable cause. Thus, the plaintiffs contend, the defendants' attempt to raise the probable cause issue in a second motion for summary judgment should be barred by the doctrine of res judicata.

¶13. This argument is likewise without merit. Though the plaintiffs assert that the trial court's consideration of the issue of probable cause was barred by the doctrine of res judicata, the sister doctrine of collateral estoppel is the closer fit. Res judicata is a rule of claim preclusion, while collateral estoppel precludes a court from revisiting issues previously decided. *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 640 (Miss. 1991). This Court has stated that, upon being reversed by the appellate court, a judgment from which an appeal has been taken loses its collateral estoppel or res judicata effect. *Smith v. Malouf*, 597 So. 2d 1299, 1302 (Miss. 1992). Thus, even if the trial judge could be said to have impliedly considered and ruled upon the probable cause issue in its first grant of summary judgment, that judgment was reversed by this Court in *Van I*. Additionally, the judgment of this Court in *Van I* does not have the effect of

collateral estoppel as to the probable cause issue because, again, as expressly stated by the Court in *Van I*, the sole issue considered by the Court in the prior appeal was the issue of favorable termination. *Van I*, 724 So. 2d at 891. There is, therefore no final judgment which has the effect of collateral estoppel upon the issue of probable cause.

## II. THE TRIAL COURT ERRED IN FINDING THAT THERE IS NO ISSUE OF FACT REGARDING THE EXISTENCE OF PROBABLE CAUSE.

¶14. The plaintiffs also argue that the trial court improperly granted summary judgment on the probable cause issue because there is an issue of fact as to whether the defendants lacked probable cause to instigate criminal proceedings against the plaintiffs. The tort of malicious prosecution must fail where a party has probable cause to institute an action. *Allstate Ins. Co. v. Moulton*, 464 So. 2d 507, 510 (Miss. 1985). To establish probable cause there must be a concurrence of (1) an honest belief in the guilt of the person accused and (2) reasonable grounds for such belief. *C & C Trucking Co. v. Smith*, 612 So.2d at 1100 (citing *Strong v. Nicholson*, 580 So.2d at 1294). "Probable cause is determined from the facts apparent to the observer when prosecution is initiated. When the facts are undisputed, it is the function of the court to determine whether or not probable cause existed." *Moon v. Condere Corp.*, 690 So. 2d at 1195 (quoting *Owens v. Kroger Co.*, 430 So. 2d at 846. "So long as the instigator of the action 'reasonably believed he [had] a good chance of establishing [his case] to the satisfaction of the court or the jury[,]' he is said to have had probable cause." *Id.* at 1195 (quoting *Presley v. South Cent. Bell Tel. Co.*, 684 F. Supp. 1397, 1399 (S.D. Miss. 1988)).

¶15. The defendants argue that they had probable cause to institute the proceedings against the plaintiffs. The evidence submitted by the defendants in support of their motion for summary judgment consisted of the affidavit of Bruce Loprete, who was employed in the surveillance department at the Gulfport Grand Casino at the time the alleged incidents occurred. The affidavit states that Loprete based his belief that he had probable cause to suspect that the plaintiffs were involved in a "shuffling scam" on the following factors: (1) On July 13, 1993, surveillance cameras recorded Lan "breaking the established card shuffling policy and procedure at the mini baccarat table." Prior to the "false shuffle" performed by Lan, the betting pattern of the players was sporadic. After the "false shuffle," the players won eleven consecutive times, resulting in a loss to the casino in excess of $40,000. (2) Two of the players at the table during this time were Cong and Ut, parents of Minh. (3) Lan was also filmed on July 20, 1993, utilizing a similar "false shuffle." (4) On July 19, 1993, the surveillance cameras recorded Minh breaking the established card shuffling procedure, after which the players won seven consecutive times, resulting in a loss to the casino in excess of $15,000. (5) Again, Cong and Ut were two of the players at the table during this time. (6) On July 24, 1993, officials from the Gulfport Police Department and Mississippi Gaming Commission viewed the surveillance tapes. (7) Loprete also met with Jim Slade, an investigator with the Isle of Capri Casino in Biloxi, Mississippi, to discuss mini-baccarat false shuffles which occurred at the Isle of Capri. Loprete states that after reviewing the surveillance tape from the Isle of Capri, Lan and Minh were identified as being players during the "false shuffle scam" at the Isle of Capri. (8) On August 17, 1993, affidavits against the plaintiffs were signed by members of the Gulfport Police Department, and warrants for the arrest of the plaintiffs were subsequently issued. The affidavit of Detective Lt. Steve Barnes is included as support for the defendants' motion for summary judgment. (9) On November 18, 1993, a preliminary hearing was conducted, and the plaintiffs were bound over to the grand jury. On July 24, 1994, indictments were returned against the plaintiffs by the grand jury.

¶16. The plaintiffs argue that the defendants should have investigated further prior to instigating criminal action. This Court has stated that "where a reasonable person would investigate further before instituting a proceeding, the failure to do so is an absence of probable cause." *Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67, 74 (Miss. 1996) (citing **Benjamin v. Hooper Elec. Supply Co.**, 568 So. 2d 1182, 1191 (Miss. 1990)). To determine whether a reasonable person would have investigated further before instituting criminal proceedings against the plaintiffs, this Court need only look at the facts available to the defendants at the time they caused the arrest of the plaintiffs. *See id.* at 74.

¶17. In support of their claim that the defendants failed to investigate properly prior to initiating criminal proceedings, the plaintiffs urge this Court to consider its opinions in *Junior Food Stores, Inc. v. Rice*, 671 So. 2d 67 (Miss. 1996), and *Nassar v. Concordia Rod & Gun Club, Inc.*, 682 So. 2d 1035 (Miss. 1996). In *Junior Food Stores*, Rice filed a complaint against Junior Food Stores (hereinafter "Super Stop") alleging malicious prosecution by Super Stop for causing an affidavit to be issued charging him with grand larceny. The district manager of Super Stop had Rice, an employee of the store, arrested after money from the store was stolen subsequent to Rice's locking up the store for the night. Super Stop argued it had probable cause to institute proceedings against Rice because Rice failed a polygraph test and because Rice worked the last shift prior to the disappearance of the money. 671 So. 2d at 75. However, the evidence showed that other employees, who were not given polygraph tests, possessed keys to the store as well. The grand jury found insufficient evidence to indict Rice. In Rice's action for malicious prosecution, the jury returned a verdict for Rice, and Super Stop appealed. This Court found that the jury reasonably could have believed that Rice had done no wrong and that there was no reasonable basis for a belief to the contrary. *Id.* at 75.

¶18. *Junior Food Stores* is distinguishable from the case at hand. The sole piece of evidence against Rice in was the polygraph test, which was admittedly subject to erroneous conclusions and inadmissible as evidence. *Id.* at 74-75. The Court noted that there was no witness produced who could implicate Rice in the theft and that Super Stop had not sought the advice of an attorney before instituting criminal proceedings. *Id.* at 74. Even the grand jury found insufficient evidence to issue an indictment against Rice. In the case at hand, the grand jury found sufficient evidence to indict the plaintiffs. Also, though Loprete's conclusions regarding the plaintiffs' "shuffling scam" are not based on the testimony of an eye witness, they are based on something perhaps even more reliable than the an eye witness - that is, a video surveillance camera. Furthermore, Loprete did not immediately institute criminal proceedings against the plaintiffs. Rather, he viewed the tapes, viewed them again with members of the Gulfport Police Department and the Mississippi Gaming Commission. Also, he met with the an investigator with the Isle of Capri Casino in Biloxi, Mississippi, to discuss mini-baccarat false shuffles that occurred at the Isle of Capri. After reviewing the surveillance tape from the Isle of Capri, Loprete identified Lan and Minh as players during the "false shuffle scam" at the Isle of Capri. Clearly, Loprete based his suspicions on much more than the store manager in *Junior Food Stores*, and his investigation was certainly more extensive.

¶19. The plaintiffs also cite to *Nassar v. Concordia Rod & Gun Club, Inc.*, 682 So. 2d 1035 (Miss. 1996), for the assertion that the defendants should have investigated further before instigating criminal proceedings. In *Nassar*, Canady, after hearing a gunshot come from the levee near his home, proceeded to investigate the shot and found a vehicle on the levee containing two white males. Though Canady asked for the names of the occupants of the vehicle, only the driver disclosed his identity. In an effort to determine the identity of the passenger in the vehicle, Canady spoke with the caretaker of a neighboring hunting club who told Canady that Nassar often "road around" with the driver of the vehicle and that he "bet that it was

them." On this information alone, Canady filed an affidavit against Nassar. After filing the affidavit, Canady discovered that Nassar was not the occupant of the vehicle. When Canady attempted to have the charges dismissed, he found that they had already been dismissed.

¶20. In Nassar's subsequent malicious prosecution action, Nassar offered, in order to refute Canady's claim that he had probable cause to institute the criminal proceedings, the testimony of two persons questioned by Canady regarding the identity of the second occupant of the vehicle. Those persons testified that they told Canady that though they thought the occupant might have been Nassar, but, at the same time, expressed reservations regarding the identity of the occupant. This Court held that Canady did not have an objectively reasonable basis to have probable cause to file the charges against Nassar. *Id.* at 1046. The Court noted that prior to filing the charges, Canady and the others knew where Nassar resided and could be located, but Canady did not attempt to "eye-ball" Nassar to verify his suspicions. *Id.* at 1037. The Court stated that, given this knowledge, Canady should have tried to locate Nassar to confirm his identity prior to filing the charges. *Id.* at 1046.

¶21. The plaintiffs' reliance on *Nassar* is misplaced. In the case at hand, Loprete viewed the tape from a video surveillance camera, from which he concluded that Minh and Lan had shuffled the cards in an irregular fashion resulting in large losses to the casino. At the time Loprete's affidavit was filed, the tape was viewed by members of the Gulfport Police Department prior to the officers' filing affidavits against the plaintiffs. Loprete also viewed the tape with members of the Mississippi Gaming Commission and met with an investigator from the Isle of Capri to discuss mini-baccarat false shuffles at the Isle of Capri. After reviewing the surveillance tape from the Isle of Capri, Loprete identified Lan and Minh as players during the "false shuffle scam" at the Isle of Capri. Again, Loprete's investigation was certainly more extensive and based on more reliable information than that of Canady in *Nassar*.

¶22. The plaintiffs complain that the case against them was not supported by the affidavits of more eye witnesses to the irregular shuffling and argue that there was nothing irregular about their shuffling of the cards. It is difficult to imagine a more thorough investigation of the plaintiffs' activities. Not only did Loprete base his suspicions on a video surveillance tape of the "false shuffling" tactics of Minh and Lan, Minh's parents were identified as players at the table. Loprete talked to members of the Gulfport Police Department as well as members of the Gaming Commission and an investigator at another casino where Minh and Lan had allegedly participated in a similar scam. In fact, while the case against Nassar was immediately dismissed, a grand jury ultimately found sufficient evidence to indict the plaintiffs in the case at hand.

¶23. The plaintiffs complain that the affidavit of Loprete is insufficient, standing alone, to demonstrate probable cause, and argue rather that the Casino should have included affidavits of other witnesses to the incidents. They contend that the shuffling of the cards was overseen by floor supervisors and argue that the Casino should have obtained the affidavits of the floor supervisors as well as Loprete. The plaintiffs, however, have offered no testimony of a floor supervisor that they were not shuffling the cards irregularly. The plaintiffs also complain that though members of the Gaming Commission and Gulfport Police Department viewed the surveillance tapes, none filed affidavits verifying Loprete's interpretation of the tapes. The plaintiffs, however, offer no evidence that the members of the Gaming Commission and the Gulfport Police Department did not agree with Loprete's interpretation of the tapes. In fact, members of the Gulfport Police Department, after viewing the tapes, issued affidavits against the plaintiffs charging them with willfully, unlawfully and feloniously conspiring to alter and manipulate associated gaming equipment.

¶24. The plaintiffs assert that Loprete's affidavit does not meet the requirements of M.R.C. P. 56(e) because Loprete did not have personal knowledge of the alleged "false shuffling" by Lan and Minh. They also complain that Loprete's affidavit does not state that he was competent to testify to the matters stated in the affidavit. Rule 56(e) provides in pertinent part: " Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein." The plaintiffs did not raise this issue before the trial court. This Court has stated:

> Where the party against whom a motion for summary judgment is made wishes to attack one or more of the affidavits upon which the motion is based, he must file in the trial court a motion to strike the affidavit. This point is made clear by Wright and Miller in their discussion of identical Federal Rule 56(e): "A party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection and, in the absence of 'a gross miscarriage of justice,' the court may consider the defective affidavit."

*Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 365 (Miss. 1983) (quoting 10 Wright & Miller, *Federal Practice & Procedure* § 2738, at 507-09 (1973)). *See also* ***Auto Drive-Away Co. of Hialeah, Inc. v. Interstate Commerce Comm'n***, 360 F.2d 446, 448-49 (5th Cir. 1966) (stating that "[a]n affidavit that does not measure up to the standards of Rule 56(e) is subject to a timely motion or other objection, formal defects in the affidavit ordinarily are waived"). This is not to suggest, however, that the Loprete affidavit was deficient. Even if it were, the plaintiffs filed no motion to strike in the trial court and before the trial court in no way suggested any dissatisfaction with the form of the affidavit.

¶25. The evidence offered by the defendants was sufficient to show that the investigation conducted led to the honest and reasonable conclusion that the plaintiffs were guilty of the crime charged. Again, this Court has explained that once the absence of genuine material issues has been shown by the movant, the burden of rebuttal falls upon the non-moving party. *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d at 1213. The plaintiffs thus must produce specific facts showing that there is a genuine material issue for trial. *Id.* (citing M.R.C.P. 56(e); *Fruchter v. Lynch Oil Co.*, 522 So. 2d at 199). Specifically, the plaintiffs must support their claim that the defendants lacked probable cause in instituting criminal proceedings by more than a mere scintilla of colorable evidence. *Id.* at 1214 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510). Rather, they must produce evidence upon which a fair-minded jury could find that probable cause did not exist. *Id.* The plaintiffs did not produce such evidence.

¶26. The only evidence offered by the plaintiffs to rebut the defendants' claim that Grand Casino and Loprete had probable cause to institute criminal proceedings are the affidavits of Minh, Lan, and Cong in which they state that the casino was required to file criminal charges against someone in order to collect for their losses from the insurance company and that they, as Vietnamese, were mere scapegoats for the casino. The plaintiffs do not, however, attach a copy of the alleged insurance policy as required by Rule 56(e). They also assert that there were other witnesses, such as floor managers, who witnessed the fact that they did not shuffle the cards irregularly. However, they do not identify these floor managers or include affidavits or any indication that they have been interviewed. The plaintiffs assert that Loprete's interpretation of the surveillance tapes is merely subjective and incorrect. They offer, however, no evidence that Loprete's interpretation was incorrect. They argue that the jury should be allowed to view the video surveillance tape to determine whether the plaintiffs were in fact shuffling the cards irregularly. They urge this Court to view the video. They have failed, however, to offer into evidence a copy of the video at any point since the

inception of their action.

¶27. It is not the duty of this Court to determine the guilt or innocence of the plaintiffs of the crime charged. It is only to look at the information available to the defendants at the time criminal proceedings were instigated to determine whether the defendants honestly and reasonably believed in the guilt of the plaintiffs. *C & C Trucking Co. v. Smith*, 612 So. 2d at 1100 (citing *Strong v. Nicholson*, 580 So. 2d at 1294). The evidence offered reveals no dispute regarding the information available to the defendants at the time criminal proceedings were initiated. The question of probable cause was thus properly a determination of law for the trial judge. The plaintiffs offered no evidence, save unsubstantiated assertions, to rebut the defendants' evidence as to their honest and reasonable beliefs at the time they initiated criminal proceedings. The defendants investigated the matter in a reasonable, complete and diligent manner.

## CONCLUSION

¶28. Based on the evidence put forth by the parties, a fair minded jury could not conclude that the criminal proceedings were instigated without probable cause. The trial court did not err in granting summary judgment in favor of the denfendants. Therefore, the judgment of the trial court is affirmed.

¶29. **AFFIRMED.**

**PITTMAN, P.J., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. PRATHER, C.J., NOT PARTICIPATING.**

BANKS, PRESIDING JUSTICE, DISSENTING:

¶30. I respectfully dissent because there is a material factual dispute as to the "false shuffle" allegedly made by Lan Thi Tran.

¶31. Here the trial court judge was ultimately presented with an affidavit of a Grand Casino employee and some casino videotapes. Bruce Loprete, the employee of the Grand Casino, stated in his affidavit that Lan Thi Tran broke established shuffling policy and procedure when she performed a "false shuffle." However, Loprete's affidavit did not identify when this "false shuffle" occurred. Moreover, Grand Casino did not enter the established card shuffling policy into evidence. A close look at the videotape does not reveal anything out of the ordinary.

¶32. Lan Thi Tran stated in her affidavit that she did not shuffle the cards in a "false" manner. Likewise, Minh Hoang Van stated that he did not "false" shuffle the cards. Lan Thi Tran noted that her supervisor and several others could see her every move. She further stated that she dealt the cards as directed by her supervisor.

¶33. Cong Vo Van also stated via affidavit that he saw the videotape of Lan shuffling the cards. Con Vo Van stated that he was an experienced baccarat player, and Lan did nothing wrong.

¶34. With these conflicting affidavits and a videotape that does not clearly show an improper shuffle, the trial court granted a summary judgment. This was error. The affidavits alone establish genuine issues of material fact. Was there a false shuffle? Was there sufficient cause to believe that a false shuffle occurred to the extent that such a belief amounted to probable cause to institute a criminal prosecution? These are

questions which may not be resolved on this record to pretermit jury consideration.

¶35. Summary judgment should not be granted when there are genuine issues of material fact. *Ellis v. Powe*, 645 So.2d 947, 952 (Miss. 1994). The comment to Rule 56 of the Mississippi Rules of Civil Procedure states in part:

> A motion for summary judgment lies only when there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Given this function, the court examines the affidavits or other evidence introduced on a Rule 56 motion simply to determine whether a triable issue exists, rather than for the purpose of resolving that issue. . . .

M.R.C.P. 56 cmt. This Court reverses grants of summary judgment when there is a dispute of material fact. *McMullan v. Geosouthern Energy Corp.*, 556 So.2d 1033 (Miss.1990).

¶36. The majority holds that there was no dispute as to a genuine issue of material fact here. I disagree and would reverse and remand for a trial.

**McRAE, J., JOINS THIS OPINION.**

1. Grand Casinos and Loprete raised the argument regarding probable cause before the trial court in their first motion for summary judgment, but the trial judge did not hear oral argument on this issue and did not address the argument in his first order granting summary judgment.