974 So.2d 944 (2008)
Charles RICHARD, Formerly d/b/a Triple "C" Trucking, Inc., Appellant
v.
SUPERVALU, INC. and Barry Dickerson, Appellees.
No. 2006-CA-00749-COA.
Court of Appeals of Mississippi.
February 5, 2008.
*946 Robert E. Buck, Greenville, attorney for appellant.
Mitchell Orvis Driskell, Robert F. Stacy, Oxford, attorneys for appellees.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CHANDLER, J., for the Court.
¶ 1. The Circuit Court of the Second Judicial District of Bolivar County granted summary judgment in favor of the appellees, Supervalu, Inc. and Barry Dickerson. The court found that there were no material facts in dispute and dismissed Charles Richard's claims for false arrest, malicious prosecution, tortious interference with business relations, and defamation of character. Aggrieved, Richard appeals and argues that the trial court erred in granting summary judgment in favor of the appellees.
¶ 2. Finding no error, we affirm.

*947 FACTS
¶ 3. Charles Richard operated a trucking company out of Bolivar County, Mississippi, that was incorporated under the name Triple "C" Trucking, Inc. He hauled freight for a number of companies, with one of his major clients being Supervalu, Inc.
¶ 4. On the morning of April 23, 1997, Richard had a trailer docked at the Supervalu warehouse in Indianola, Mississippi. It was his responsibility to unload the trailer, and on that particular morning, he hired two "lumpers," who were hired hands that would help unload. The two men who assisted him that day were Elie Winston, who had worked with Richard previously, and Ernest Morgan, both employees of Supervalu. Richard called Winston the night before, and Winston arranged for Morgan to also help unload.
¶ 5. Winston and Morgan went out to the Supervalu shipping docks the next morning at approximately 4:00 a.m. and proceeded to unload the truck. After they finished unloading, they pulled down the trailer door. When Richard arrived later that morning to unload another truck, a supervisor for Supervalu, Rickey Lindsey, was inspecting the trailer that the two men had finished unloading." Lindsey pointed out to Richard that, even though Winston and Morgan had finished and closed the trailer door, there was some product remaining in the trailer that should have been empty. Richard attempted to dismiss the product that remained by stating that it was probably product destined for another location. Upon further inspection, however, Lindsey discovered that the product, which included an exclusive brand of sugar, belonged to Supervalu.
¶ 6. Upon discovering his company's merchandise on Richard's truck that should have been empty, Lindsey called the Supervalu receiving superintendent, Barry Dickerson, to come to the warehouse. Dickerson inspected the trailer and confirmed that it was Supervalu merchandise that had been loaded onto the trailer. Lindsey then called the police to report the incident. According to Dickerson, there had been significant shortages during recent Supervalu inventories. Officers questioned the parties at the scene, including Richard and Morgan but not Winston, who had already left the area. According to Indianola Police Chief Richard Smith, Morgan informed officers that Richard had asked Winston and him to load some product onto the trailer. Thereafter, Chief Smith asked Richard to accompany him to the station to "get everything hashed out," to which Richard agreed. Richard was handcuffed and taken to the Indianola Police Department. Morgan was also brought to the station, and Winston, who had disappeared earlier, turned himself in to the police later that afternoon.
¶ 7. At the police station, Winston made a signed statement that implicated Richard in the theft of the goods from Supervalu. According to. Winston, Richard asked him to put something on his truck for him and told him that it did not matter what it was. Winston said he and Morgan would split the money given to them by Richard. He was nervous, however, and when he saw Lindsey conferring with one of the shipping workers, Johnny White, he ran. This corroborated the earlier statement by Morgan, that Richard had asked them to load the product onto the trailer.
¶ 8. Along with Morgan and Winston, Richard was arrested for grand larceny. Chief Smith stated in his deposition that it was his decision to arrest Richard, and it was not a decision made by Supervalu, Dickerson, or Lindsey. The next day, Chief Smith received a tip from an unidentified informant that Richard was selling *948 merchandise out of his warehouse. Based on the tip, police obtained a search warrant for Richard's warehouse in Merigold, Mississippi. During the search of Richard's warehouse, officers discovered more merchandise that belonged to Supervalu. Richard told officers that he had been late delivering the merchandise, and he was storing it there until he could get the situation resolved. At some point during the search, Richard disappeared without telling anyone. A few days later, Richard's attorney contacted the police, and then Richard turned himself in at the police station.
¶ 9. Morgan and Winston entered guilty pleas, but Richard went to trial. At the trial, Morgan and Winston contradicted their prior statements, and the trial ended with a hung jury. After the State dropped the charges against Richard, he filed the present complaint. The circuit court granted summary judgment in favor of Dickerson and Supervalu, and Richard appealed.

ISSUES AND ANALYSIS
¶ 10. Richard's sole assignment of error is that the trial court should not have granted the motion for summary judgment filed by Dickerson and Supervalu.
¶ 11. We apply a de novo standard when reviewing a trial court's grant of summary judgment. Miller v. Meeks, 762 So.2d 302, 304 (¶ 3) (Miss.2000). Under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The party seeking summary judgment bears the burden of proving there is no genuine issue of material fact. Miller, 762 So.2d at 304 (¶ 3). The court must review all evidence in a light most favorable to the party against whom the motion for summary judgment is made. Id.
¶ 12. In making his argument, Richard claims that the trial court denied him the right to a trial by jury when it granted the motion for summary judgment. The supreme court has addressed summary judgment and its relation to a party's right to a jury trial:
Trial judges must be sensitive to the notion that summary judgment may never be granted in derogation of a party's constitutional right to trial by jury. Miss. Const. art. 3, § 31 (1890). On the other hand, there is no violation of the right of trial by jury when judgment is entered summarily in cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. There is no right of trial by jury in such cases.
Brown v. Credit Ctr., Inc., 444 So.2d 358, 362 (Miss.1983).
¶ 13. In his complaint, Richard alleged four claims: malicious prosecution, illegal arrest, defamation, and tortious interference with business relations. We will examine each of these claims and address why summary judgment was properly granted.
A. Malicious prosecution
¶ 14. The following ate the elements of malicious criminal prosecution:
(1) the institution or continuation of original judicial proceedings, either criminal or civil;
(2) by, or at the insistence of the defendants;
(3) the termination of such proceeding in plaintiffs favor;
(4) malice in instituting the proceeding;
(5) want of probable cause for the proceedings; and

*949 (6) the suffering of injury or damages as a result of the action or prosecution.
Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 721 (¶ 32) (Miss.2001).
¶ 15. A claim of malicious prosecution will not lie if there was probable cause to make the arrest. Van v. Grand Casinos of Miss., Inc., 767 So.2d 1014, 1019-20 (¶ 14) (Miss.2000). "Probable cause is determined from the facts apparent to the observer when prosecution is initiated." Van, 767 So.2d at 1020 (¶ 14) (quoting Moon v. Condere Corp., 690 So.2d 1191, 1195 (Miss.1997)). "So long as the instigator of the action `reasonably believed he [had] a good chance of establishing [his case] to the satisfaction of the court or the jury[,]' he is said to have had probable cause." Id.
¶ 16. In this case, the evidence established that Lindsey and Dickerson found Supervalu merchandise in Richard's trailer that should have been empty. It appeared to be merchandise that had been loaded onto the trailer after Winston and Morgan finished unloading that morning's shipment. When asked about it, Richard said that it was probably merchandise for another store; however, some of the merchandise was exclusive to Supervalu and could not have been destined for another store. Furthermore, Lindsey and Dickerson checked the merchandise and found a Supervalu pallet tag that had been partially removed. They concluded that the merchandise had been taken from the warehouse and loaded onto, the truck. Prior to the arrest of Richard and the others, Morgan claimed that he and Winston had loaded the product onto the trailer for Richard. While he later recanted that statement at Richard's trial, at the time he implicated Richard.
¶ 17. From the uncontradicted evidence, and not considering Winston's statement implicating Richard that was taken after the arrest, there was probable cause to arrest Richard. Accordingly, we do not find that the trial court erred in finding probable cause and, therefore, granting summary judgment on Richard's claim for malicious prosecution.
B. False arrest or imprisonment
¶ 18. There are only two elements to a claim of false imprisonment: (1) detention of the plaintiff and (2) unlawfulness of that detention. Morgan v. Greenwaldt, 786 So.2d 1037, 1042 (¶ 11) (Miss. 2001) (quoting Lee v. Alexander, 607 So.2d 30, 35 (Miss.1992)).
¶ 19. As with a claim for malicious prosecution, a claim of false arrest must fail where there was probable cause to make the arrest. Van, 767 So.2d at 1019-20 (¶ 14); Keen v. Simpson County, 904 So.2d 1157, 1161 (¶ 21) (Miss.Ct.App.2004). Because we have already found that there was probable cause to arrest Richard for stealing Supervalu's merchandise, Richard's claim for false arrest must fail just like his claim for malicious prosecution. We, therefore, find that summary judgment was properly granted on this claim.
C. Defamation
¶ 20. There are four elements to a defamation claim: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability irrespective of special harm or existence of special harm caused by the publication. Armistead v. Minor, 815 So.2d 1189, 1193 (¶ 7) (Miss.2002).
¶ 21. A statement that would normally be actionable may be privileged if it was "made in good faith on any subject *950 matter on which the person communicating has an interest or in reference to which he has a duty to protect to a person having a corresponding interest or duty. . . ." Downtown Grill, Inc. v. Connell, 721 So.2d 1113, 1119 (¶ 23) (Miss.1998) (quoting J.C. Penney Co. v. Cox, 246 Miss. 1, 7-8, 148 So.2d 679, 682 (1963)). A communication may be privileged if it is "made in good faith in the prosecution of any inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing [to punishment the criminal]." Id. at 1119 (¶ 21) (quoting Ill. Cent. R.R. v. Wales, 177 Miss. 875, 885, 171 So. 536, 538, (1937)). Furthermore, "[t]ruth is an absolute defense to a defamation lawsuit in Mississippi." Journal Publ'g Co. v. McCullough, 743 So.2d 352, 360 (¶ 20) (Miss.1999).
¶ 22. Regardless of the outcome of Richard's criminal trial, we do not agree that informing the police about potentially stolen product was an untruthful statement. It was uncontradicted that Dickerson and Lindsey discovered Supervalu merchandise that should not have been in the back of Richard's truck. Richard's truck should have been empty, and warehouse records indicated that the items had been loaded onto the truck from the Supervalu warehouse.
¶ 23. Furthermore, the communication of such information to the police was privileged and, therefore, not defamatory. Dickerson and Supervalu clearly had an interest in pursuing an investigation of possible theft of company merchandise, especially considering they had found large shortages during recent inventories. The responding officers also had an interest in investigating a crime. Richard presented no evidence that either Supervalu or Dickerson reported the information to the police in bad faith.
¶ 24. There was no evidence that Dickerson and Supervalu did anything other than pursue an investigation of Richard, who they had reason to believe had been stealing company merchandise. Accordingly, we find that the trial court properly granted summary judgment on Richard's claim for defamation.
D. Tortious interference with business relations
¶ 25. Richard's claim in his complaint was for "reckless injury to bust'less activity," but the parties and the trial court treated it as a claim for tortious interference with business relations. The elements of a claim of tortious interference with business relations are as follows: (1) the acts were intentional and willful, (2) the acts were calculated to cause damage to the plaintiffs in their lawful PDN, Inc. v. Loring, 843 So.2d 685, 688 (¶ 9) (Miss.2003).
¶ 26. Simply put, there is no evidence in the record that Dickerson or Supervalu intended to cause damage to Richard's business. As such, there was no genuine issue of material fact surrounding this claim, and the trial court properly granted summary judgment with regard to it.
E. Intentional infliction of emotional distress
¶ 27. Richard did not include intentional infliction of emotional distress as one of his claims in his complaint, instead he listed "infliction of emotional and mental distress" as a type of damage suffered. Accordingly, the trial court did not address it as a claim. As a type of damages, it was properly dismissed when the court dismissed *951 all of Richard's underlying claims through summary judgment.
¶ 28. Nevertheless, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." Speed v. Scott, 787 So.2d 626, 630 (¶ 19) (Miss.2001) (quoting Jenkins v. City of Grenada, 813 F.Supp. 443, 446 (N.D.Miss.1992)). To justify a finding of intentional infliction of emotional distress, a plaintiff must prove wanton and willful conduct that evokes outrage or revulsion. Id. at 630 (¶ 17). There was probable cause for the initial arrest and for the subsequent search of Richard's warehouse. Nothing in the record indicates otherwise, nor were the actions of Dickerson and Supervalu such that would evoke outrage or revulsion.
¶ 29. We find that summary judgment was properly granted against Richard on each of his claims. The trial court was not in error in finding that there were no genuine issues of material fact and that Dickerson and Supervalu were entitled to judgment as a matter of law.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.